UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| **VALPAK DIRECT MARKETING SYSTEMS, INC.**, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>**TRIPLE O PARTNERS, INC.**, a Florida corporation, **PETER J. O'TOOLE**, an individual, **BETSY O'TOOLE**, an individual, and **VIRGINIA O'TOOLE**, an individual,<br><br>Defendants. | Case No.: 8:08-cv-1841-T-17EAJ |

## PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM

Plaintiff, Valpak Direct Marketing Systems, Inc. ("**Valpak**"), pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, moves to dismiss Defendants' counterclaim [DKT 18], and says:

1.  This is a an action for trademark infringement and breach of contract arising out of a franchise relationship between Valpak, as franchisor, and Triple O Partners, Inc. ("**Triple O**"), as franchisee. Defendants, Peter J. O'Toole, Betsy O'Toole and Virginia O'Toole (the "**O'Toole's**"), are Triple O's owners and guarantors.

2.  With their amended answer to Valpak's complaint, Defendants brought a counterclaim [DKT 18]. The counterclaim alleges that Valpak violated Florida's Deceptive and Unfair Trade Practices Act and that Valpak breached agreements with Triple O. [See DKT 18].

3.  Defendants' counterclaim is defective because, among other reasons, (1) the O'Toole's lack standing to sue for claims belonging to Triple O; (2) the claim sounding in fraud is not alleged with the required particularity; and (3) the claim for breach of contract fails to allege the existence of valid contract(s) containing all of the obligations claimed to have been breached.

4.      Accordingly, on the grounds specified in the Memorandum of Law, Defendants' counterclaim fails to state a claim upon which relief can be granted.

**WHEREFORE**, Plaintiff, Valpak Direct Marketing Systems, Inc., requests that Defendants' counterclaim be dismissed.

## MEMORANDUM OF LAW

### I. RELEVANT ALLEGATIONS OF THE COUNTERCLAIM

In July of 2005, Triple O entered into a franchise agreement[1] with Valpak. (See Counterclaim [DKT 18], ¶¶ 66; 78 & Franchise Agreement (copy attached to Valpak's Complaint [DKT 1]). Before entering into the franchise agreement, Triple O claims that it received "Representations" from Valpak consisting of written statements in a Uniform Franchise Offering Circular presented to Triple O, and oral statements made to Triple O, "through its principal, Peter O'Toole." (See Counterclaim, ¶¶ 51, 57). Defendants allege that these "Representations" were false and misleading and induced Triple O's entry into the franchise agreement. (See id., ¶¶ 62, 64 & 66).

Count I of the counterclaim, seeks recovery for Valpak's alleged violation of Florida's Deceptive and Unfair Trade Practices Act ("**FDUPTA**"). (See id., ¶70) According to Defendants, they have, collectively, "incurred substantial damages as a result of Triple O's purchase of the Valpak franchise." (See id., ¶ 69). In their *ad damnum*, Defendants, also collectively, seek the remedy of rescission under their FDUTPA claim. (See id., *ad damnum*).

In Count II of their counterclaim, Defendants allege that Triple O did not receive the training and timely support it was promised, that the support that Valpak did render was not

---

[1] Because the franchise agreement is central to Defendants' counterclaim and its contents undisputed, it may be considered on a motion to dismiss even though it was not attached to the subject pleading. Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002).

"adequate and competent," and that Valpak did not enforce system standards and policies as it pertained to a dispute Triple O had with another franchisee. (See Counterclaim, ¶¶ 80-83). Defendants contend that each of the foregoing "failures by Valpak is a breach of its obligations set forth by the Franchise Agreement, its Operations Manual and the implied covenant of good faith and fair dealing inherent in each agreement." (See id., ¶84). Although Defendants allege that (only) Triple O was harmed by these claimed breaches, Defendants nevertheless collectively seek damages, attorneys' fees and other remedies under Count II. (See Counterclaim, ¶¶ 85-89 & *ad damnum*).

## II. LEGAL STANDARD

The standard of review applied to a motion to dismiss a counterclaim is the same as that applied to a motion to dismiss a complaint. E.g., Continental Ins. Co. v. Roberts, 2007 U.S. Dist. LEXIS 29300, at *4-6 (M.D. Fla. April 20, 2007). To survive a motion to dismiss, a complaint must contain factual allegations that are "enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1964-65.

## III. ARGUMENT

### A.    The O'Tooles Lack Standing

By the counterclaim, the O'Toole's, who are shareholders of Triple O, sue for damages based on alleged misrepresentations not made to them (individually) and for breach of agreements to which they are not parties. They make no claim of individualized harm or of any

duty owing to them from Valpak that is separate and distinct from Triple O. In short, the O'Toole's have no plausible claim against Valpak.

It is well established that corporate shareholders are not permitted to assert claims on behalf of a corporation. See KMS Restaurant Corp. v. Wendy's Intern., Inc., 361 F.3d 1321, 1324 (11th Cir. 2004)(corporate chairman lacked independent right to sue for tortious interference with contract between his company and a third party); Warter v. Boston Securities, S.A., 2004 WL 691787, at *9 (S.D. Fla. March 22, 2004) (the "law is clear that only a corporation and not its shareholders, not even a sole shareholder, can complain of an injury sustained by, or wrong done to, the corporation.") (citing U.S. v. Palmer, 578 F.2d 144, 145-46 (4th Cir. 1978)); Schaffer v. Universal Rundle Corp., 397 F.2d 893, 896 (5th Cir. 1968)(holding that only a corporation may sue for its own losses even "in cases where the individual is the sole stockholder."); Lincoln Oldsmobile, Inc. v. Branch, 574 So.2d 1111, 1114 (Fla. 2d DCA 1990) ("[t]he injury here is to the corporation and not to [the shareholder]. In such cases, a stockholder cannot maintain an action in his own name but must bring it in the name of the corporation. This is true even where the individual is the sole stockholder.").

In KMS Restaurant, for instance, an individual plaintiff, signed a letter of intent in his capacity as chairman of a to-be-formed corporation to acquire twenty-seven restaurants from a third party. KMS Restaurant Corp. v. Wendy's Intern., Inc., 361 F.3d 1321, 1323 (11th Cir. 2004). Title to the restaurants would be held by the to-be-formed corporation. Id. The newly formed corporation then entered into a purchase and sale agreement. Id. The individual plaintiff was not a party to that agreement, but sought, in his individual capacity, to recover for the franchisor's alleged tortious interference with it. Id. Rejecting this claim, the Eleventh Circuit reasoned that any rights under the letter of intent belonged to the corporation and further noted

that "of course, [the shareholder] in his individual capacity cannot pursue a claim on behalf of the [corporation]." Id. at 1324 (citing Stevens v. Lowder, 643 F.2d 1078, 1080 (5th Cir. 1981)).

The same principle is applied whether the shareholder plaintiff sues in tort, as in KMS Restaurant, or in contract, as in Biscayne Investment Group, Ltd. v. Guarantee Management Services, Inc., 903 So. 2d 251, 254 (Fla. 3d DCA 2005). Generally, under Florida law[2], unless a person is a party to a contract, that person may not sue for its breach. Biscayne Investment Group, 903 So. 2d 251, 254 (Fla. 3d DCA 2005) (citing Metropolitan Life Ins. Co. v. McCarson, 467 So. 2d 277 (Fla. 1985)); see also Bochese v. Town of Ponce Inlet, 405 F.3d 964, 981 (11th Cir. 2005)(holding that the issue is one of standing and a court should look to state law to determine whether a non-party has a legally enforceable right therein). Only in the limited circumstance where the non-party is a specifically-intended beneficiary of the agreement, may the non-party sue for breach. Biscayne Investment, 903 So. 2d at 254; see also Bochese, 405 F.3d at 981-82 (examining Florida law on enforcement of contracts by third party beneficiaries and affirming dismissal for lack of standing).

Here, the O'Tooles are not parties to the franchise agreement. They do not allege any duty owed to them individually, that they suffered any individualized harm, that they are a third party beneficiary or any other ground permitting them to sue derivatively for the claims of their corporation. Accordingly, the O'Tooles do not have standing to assert any of the counts of the Counterclaim and it is due to be dismissed in its entirety on that ground.

  B.  **The Counterclaim Fails to State a Claim for Violation of FDUTPA**

    1.  **No Allegation of a Violation of an FTC Rule or Regulation**

Defendants' counterclaim initially alleges a series of oral and written misrepresentations

---

[2] Florida law governs the franchise agreement. (Franchise Agreement ¶ 15.7).

by Valpak. Curiously, though, under the heading "Violation of Florida's Deceptive and Unfair Trade Practices Act", Defendants' counterclaim fails to mention or incorporate these allegations. (Counterclaim at 9). Instead, Defendants allege that only that it is a violation of Section 501.203(3)(a), Florida Statutes to violate rules promulgated by the Federal Trade Commission. (Counterclaim, ¶ 70). But Defendants never allege that Valpak violated an FTC rule or regulation. Thus, Count I fails to state a claim for violation of FDUTPA.

### 2. Failure to State a Claim for Fraudulent Misrepresentation

If Count I is to be read as Valpak violated FDUTPA, generically, by making "misrepresentations," the counterclaim is nevertheless woefully short of the particularity required by Rule 9 of the Federal Rules of Civil Procedure.

A FDUTPA claim that relies on allegations of fraud must comply with the pleading requirements of Rule 9. See Stires v. Carnival Corp., 243 F. Supp. 2d 1313, 1322 (M.D. Fla. 2002)(applying Rule 9 to FDUTPA claim and dismissing same). Rule 9 requires that a claimant allege (1) the exact statements or omissions made, (2) the time and place of each such statement and who made the statement or omission, (3) the substance of the statement and how it misled the claimant, and (4) the adversary's gain due to the alleged fraud. See Brooks v. Blue Cross Blue Shield, 116 F.3d 1364, 1371 (11th Cir. 1997).

Defendants allegations of misrepresentations purportedly made by Valpak merely state the general subjects of the alleged misrepresentations and who made them. For instance, Defendants contend that the Uniform Franchise Offering Circular contains representations "regarding, among other things, the training Valpak provides to its franchisees" which they then label as "Training Misrepresentations" and contend were false. (Counterclaim, ¶¶ 54, 62). In identical fashion, Defendants also allege that there are also "Territory Representations," "Operations Representations," and "Support Representations," declaring all of them fraudulent.

(Id., ¶¶ 53, 55-56 & 62). Defendants have completely failed to allege the exact statement or omission they are claiming is a misrepresentation, where in the Offering Circular they appear, how they were misled or Valpak's gain due to the supposed misrepresentations. Defendants do little better with their allegations of oral misrepresentations, failing in that instance to provide date and time of the supposed oral statements, information about how the supposed misrepresentations (about future events) misled the Defendants or how Valpak might have gained from them. (Id., ¶¶ 57-61). In sum, Defendants' cavalier assertions of misrepresentations by Valpak neglect to provide even the most basic information required by Rule 9. Accordingly, Count I is due to be dismissed for failure to allege the claims of fraud and misrepresentation with the required particularity.

### 3. Actual Damages Is Only Remedy for Violation of FDUTPA

Under Count I of their counterclaim, Defendants request rescission of the franchise agreement. (See Counterclaim, *ad damnum*). Rescission is not a remedy available under FDUTPA. See Fla. Stat. § 501.211(b) (permitting recovery for "actual damages"); see, e.g., Urling v. Helms Exterminators, Inc., 468 So. 2d 435, 454 (Fla. 1st DCA 1985) (holding that under FDUTPA actual damages would permit a consumer to recover the cost of the good or product less the value of what was received, but not consequential damages attributed to the consumer's use of the received goods or services). For this additional reason, Count I of the Amended Counterclaim should be dismissed.

### C. Count II of the Counterclaim Should Be Dismissed

Count II of the counterclaim alleges that Valpak was required, "[p]ursuant to the franchise agreement and the operations manual provided to Triple O pursuant to the franchise agreement's terms … to perform certain obligations for Triple O, including providing training, support, enforcement of system standards, policies and procedures …" (Counterclaim, ¶ 79).

The Counterclaim further alleges that Valpak failed to do so which "is a breach of its obligations set forth by the franchise agreement, its operations manual, and the implied covenant of good faith and fair dealing." (Id., ¶ 84).

Clearly, the franchise agreement is a contract between Triple O and Valpak. But the operations manual and other policies and procedures of Valpak are <u>not</u>. Indeed, the counterclaim is bereft of any allegation supporting the formation of a valid contract between Triple O and Valpak which consists of, includes or even incorporates the operations manual.[3] See <u>Abruzzo v. Haller</u>, 603 So.2d 1338, 1340 (Fla. 1st DCA 1992)(under Florida law, the elements of breach of contract are (1) a valid contract; (2) a material breach; and (3) damages). This is of great significance because most, if not all, of the items of support, training, *etc.* being complained-of have a source other than the parties' franchise agreement. It is axiomatic that absent an actual *contractually-based* source of obligations, Defendants cannot state a claim for breach of contract.

Defendants in apparent recognition of the shortcoming of their claims for express breach of contract, claim additionally that each of the same failures apparently constituting express breaches are also a breach of Valpak's implied duty of good faith and fair dealing. This "claim," to the extent it is intended as a separate or supplemental claim to Count II, also fails because Defendants fail to identify an express provision of any contract that was allegedly breached. See <u>Hospital Corp. of Am. v. Florida Medical Center, Inc.</u>, 710 So. 2d 573, 575 (Fla. 4th DCA 1998). "[A] duty of good faith must relate to the performance of an express term of the contract and is

---

[3] The franchise agreement does contain a definition of "Operating Manual," as the "materials provided by [Valpak] which contain the standards, policies and operating procedures prescribed by the Company for the operation of franchised business operating under the VALPAK® system including the Production Handbook. (Franchise Agreement, §2.1 (definition of "Operating Manual"); § 5.2 (obligating Valpak to furnish an "Operating manual" to Triple O). Consistent with this definition, Triple O is required in the franchise agreement to comply with certain provisions of the Operating Manual along with other policies and procedures. (<u>E.g.</u> Franchise Agreement, § 4.2 (restricting franchisee to use supplied software for purposes described in the Franchise Agreement and Operating Manual)). But no such obligations are extended via the Franchise Agreement to Valpak, in particular with respect to the various gripes Defendants claim to have with support, training, intermarket sales, *etc.*

not an abstract and independent term of a contract which may be asserted as a source of breach when all other terms have been performed pursuant to the contract requirements." Id.; see also Ernie Haire Ford, Inc. v. Ford Motor Co., 260 F.3d 1285, 1291 (11th Cir. 2001)(explaining that the purpose of the implied covenant is to protect reasonable expectations of contracting parties by prohibiting the "capricious exercise of discretion accorded to [a party] under a contract.") Accordingly, the "good faith requirement does not exist 'in the air'. Rather it attaches only to the performance of a specific contractual obligations." Johnson Enterprises of Jacksonville v. FPL Group, Inc., 162 F.3d 1290, 1314 (11th Cir. 1998). Therefore, without identifying a specific, express contract term which Valpak allegedly failed to perform "in good faith", Defendants' claim for breach of the duty of good faith fails to state a claim.

**IV.  Conclusion**

For the foregoing reasons, Plaintiff requests that the Amended Counterclaim be dismissed for failure to state a claim upon which relief can be granted.

>
> Respectfully submitted,
>
> s/Christian C. Burden
> Christian C. Burden
> Florida Bar No. 0065129
> christian.burden@dlapiper.com
> **DLA PIPER LLP (US)**
> 100 N. Tampa St., Suite 2200
> Tampa, Florida 33602
> 813/229-2111
> 813/229-1447 (fax)
> Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

**I CERTIFY** that on January 28, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to the following: Christian C. Burden, Amanda Ballard and Dennis D. Leone, and that a true and correct copy of the foregoing was sent to the following non-CM/ECF participants by United States Mail: none.

> s/Christian C. Burden
> Attorney