UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

VALPACK DIRECT MARKETING
SYSTEMS, INC., etc.,

       Plaintiff,

v.                      CASE NO.  8:08-CV-1841-T-17EAJ

TRIPLE O PARTNERS,
INC., etc., et al.,

       Defendants.

_____/


ORDER

    This cause is before the Court on:


    Dkt. 23    Motion to Dismiss Counterclaim
    Dkt. 29    Opposition

    The Complaint in this case includes the follows claims:

1) Count I - trademark infringement; 2) Count II - breach of
contract (specific performance); 3) Count III - breach of
contract (money damages); 4) Count IV - breach of promissory note
and 5) Count V - breach of guaranty.  Defendant Triple O
Partners, Inc. signed a franchise agreement with Plaintiff
Valpack.  Defendants Peter J. O'Toole, Betsy O'Toole and Virginia
O'Toole ("the O'Toole Defendants") are Triple O's owners and
guarantors.


    Defendants have asserted the following counterclaims:


1.    Fraudulent inducement, seeking rescission of franchise
        agreement and judgment in excess of $382,000;

2.    Deceptive and unfair trade practices, F.S. 501.201, seeking

Case No. 8:08-CV-1841-T-17EAJ

    rescission and judgment in excess of $382,000;

3.    Breach of contract, allowing other franchise to operate in exclusive territory, seeking rescission and judgment in excess of $382,000;

4.    Breach of contract, seeking damages in excess of $1,000,000;

5.    Breach of contract and covenant of good faith and fair dealing, as to core pricing;

6.    Breach of contract and damages based on change of telephone number;

7.    Breach of contract based on website, involving mandatory fee, seeking damages for breach of statutory and regulatory obligations to disclose all fees payable in connection with operation of a franchise and to disclose material facts regarding territorial protections afforded franchisees;

8.    Breach of contract and covenant of good faith, seeking damages;

9.    Breach of contract based on improper termination, seeking damages;

10.    Breach of contract based on all of the above actions, rendering sale of the franchise impossible, seeking damages.

    Based on the counterclaims, Defendants seek an order directing rescission, and a refund of all monies expended to develop the franchise, plus interest and attorney's fees, the award of damages, and costs, and dismissal of the claims against Defendants.

    Plaintiff moves for dismissal of Defendants' Counterclaim because: 1) the O'Toole Defendants lack standing to sue for claims belonging to Triple O; 2) the claim sounding in fraud is not alleged with the required particularity; 3) the claim for breach of contract does not allege the existence of a valid

Case No. 8:08-CV-1841-T-17EAJ

contract or contracts containing all the obligations claimed to
have been breached.

Defendants oppose the Motion to Dismiss.

II.  Standard of Review

The standard of review applied to a motion to dismiss a
counterclaim is the same as that applied to a motion to dismiss a
complaint.  As the Supreme Court held in Bell Atlantic v.
Twombly, 127 S.Ct. 1955 (2007), a complaint must be dismissed
pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure
for failure to state a claim upon which relief can be granted if
it does not plead "enough facts to state a claim for relief that
is plausible on its face." Id. At 1974 (rejecting the traditional
12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-
46 (1957).  The allegations in plaintiff's complaint are presumed
true at this stage and all reasonable factual inferences must be
construed in plaintiff's favor.  However, the Court need not
accept inferences drawn by plaintiffs if such inferences are
unsupported by the facts set out in the complaint.  Nor must the
Court accept legal conclusions cast in the form of factual
allegations.  To survive a motion to dismiss, the factual
allegations in the complaint "must be enough to raise a right to
relief above the speculative level." Bell Atlantic, 127 S.Ct. at
1965.

III.  Discussion

A.  "Shotgun" Pleading

3

Case No. 8:08-CV-1841-T-17EAJ

At the outset, the Court notes that Defendants incorporate all prior paragraphs into each counterclaim. The Court therefore **dismisses** Defendants' counterclaims, with leave to file amended counterclaims which comply with the Federal Rules of Civil Procedure. <u>BMC Industries, Inc. v. Barth Industries, Inc.</u>, 160 F.3d 1322 (11th Cir. 1998)

B.  Standing

Plaintiff argues that the O'Toole Defendants, as corporate shareholders, lack standing to assert claims on behalf of the corporation, Triple O Partners, Inc. Plaintiff argues that the O'Toole Defendants are not parties to the franchise agreement, do not allege any duty owed to them individually, that they suffered any individualized harm, that they are a third party beneficiary, or any other ground permitting them to sue derivatively for the claims of Triple O Partners, Inc. Plaintiff seeks dismissal of the entire Counterclaim.

The O'Toole Defendants argue that because Defendants have given a guaranty to Plaintiff Valpak, they have standing to assert counterclaims against Valpak insofar as the counterclaims seek rescission of the agreement that requires the guaranty and rescission of the guaranty itself. The O'Toole Defendants rely on <u>Schaeffer v. Gilmer</u>, 353 So.2d 847 (Fla. 1st DCA 1997), in which the Court held that the counterclaim alleging breach of contract of two individual guarantors who had signed guarantees that specifically incorporated a loan agreement stated a cause of action against the creditor.

In <u>Schaeffer v. Gilmer</u>, <u>supra</u>, the Court found that where

4

Case No. 8:08-CV-1841-T-17EAJ

the guaranty agreement provided that "conditions precedent to the disbursement of the loan proceeds are set forth in a Construction Loan Agreement of even date herewith between the Borrower and the Trust," the two instruments had to be construed together, and the guaranty was "conditional."

The "Personal Guaranty of Owner/Shareholder" (Dkt. 1-3) provides as follows:

> **Scope of Guaranty** In consideration of and as an inducement to, the signing and delivery of the Agreement by **Valpak Direct Marketing Systems, Inc. ("us," or "our" or "we")**, each of you signing this Guaranty personally and unconditionally: (a) guarantees to us and our successors and assigns that the Franchisee will punctually pay and perform each and every undertaking, agreement and covenant set forth in the Agreement; and (b) agrees to be personally bound by, and personally liable for the breach of, each and every provision in the Agreement.

The Personal Guaranty further provides, in part, that each Guarantor agrees that the direct and immediate liability under the Guaranty is joint and several, and the liability of each Guarantor is not contingent or conditioned upon Plaintiff's pursuit of any remedies against the Franchisee or any other person. The Personal Guaranty further provides that the Guaranty is governed by Florida law.

Under Florida law, there is a distinction between an absolute guaranty and a conditional guaranty. In <u>Anderson v. Trade Winds Enterprises Corp.</u>, 241 So.2d 174, 177 (4th DCA 1970),

5

Case No. 8:08-CV-1841-T-17EAJ

the Court said:

> "One who undertakes an absolute guarantee of
> payment by another becomes liable immediately
> upon default in payment by the other.  One
> who undertakes to conditionally guarantee
> another's payment does not become liable
> until the occurrence of the conditions.
> (Citation omitted).  Whether a contract of
> guaranty is absolute or conditional depends
> on the intent of the parties as expressed in
> their contract.  If a written contract in
> unambiguous terms expresses an unconditional
> guarantee, then the guaranty is absolute and
> the guarantor's liability cannot be limited
> or qualified by parol evidence as to a prior
> or contemporary understanding."

The Personal Guaranty in this case includes an expression
that the Guaranty is unconditional.  The Court finds that this
case is not similar to the facts of Schaeffer v. Gilmer, supra.
After consideration, the Court **grants** the Motion to Dismiss as to
lack of standing, with leave to file an amended counterclaim.

C.  FDUPTA - Failure to State Claim

1.  No Allegation of Violation of FTC Rule or Regulation

Plaintiff argues that Defendants allege only that it is a
violation of Sec. 501.203(3), Florida Statutes, to violate rules
promulgated by the Federal Trade Commission.

Defendants respond that the facts alleged describe a
violation of the FTC rule that proscribes misrepresentations made
by franchise sellers to prospective franchise purchasers.  See 16
C.F.R. 436.  Defendants further argue that Defendants'

6

Case No. 8:08-CV-1841-T-17EAJ

allegations are sufficient to state a claim against Plaintiff for
violation of FDUPTA as a whole.

After consideration, the Court **denies** the Motion to Dismiss
as to this issue.

2.  Fraudulent Misrepresentation

Plaintiff argues that the allegations of fraudulent
inducement do not comply with Rule 9, Fed.R.Civ.P.  Rule 9
requires that a claimant allege: 1) the exact statements or
omissions made; 2) the time and place of each such statement and
who made the statement omission; 3) the substance of the
statement and how it misled the claimant; and 4) the adversary's
gain due to the alleged fraud.  See Brooks v. Blue Cross Blue
Shield. 116 F.3d 1364, 1371 (11th Cir. 1997).

Defendants respond that Defendants have alleged two
misrepresentations: 1) the franchisee's right to an exclusive
territory; and 2) the plan to open a new manufacturing facility
in St. Petersburg, which, upon opening, would lower printing
costs to franchisees.  Defendants argue that Defendants identify
the speakers, Richard Folsom, Todd Gisclair and Marti Hall, as
well as the place and time.  Plaintiff benefitted from the
misrepresentations because Defendants agreed to purchase the
franchise.

After consideration, the Court **grants** the Motion to Dismiss
in part, and **denies** the Motion to Dismiss in part.  The Motion to
Dismiss is **denied** as to the above oral representations.  As to
alleged misrepresentations in the Offering Circular, the Motion

Case No. 8:08-CV-1841-T-17EAJ

to Dismiss is **granted** with leave to file an amended complaint
which meets all requirements of Rule 9.

3.  Remedy for Violation of FDUPTA

    Plaintiff argues that rescission is not a remedy available
under FDUPTA.  <u>See</u> Fla. Stat. Sec. 501.211(b)(permitting recovery
for actual damages).

    In the context of FDUPTA, "actual damages" have been defined
as "'the difference in the market value of the product or service
in the condition in which it was delivered and its market value
in the condition in which it should have been delivered according
to the contract of the parties.'" <u>See</u> <u>Smith v. 2001 South Dixie</u>
<u>Highway, Inc.</u>, 872 So.2d 992 (Fla. 4th DCA 2004).  "Actual
damages" does not include consequential damages.

    The Court **grants** the Motion to Dismiss as to this issue,
with leave to file an amended counterclaim.

D.  Failure to State a Claim as to Breach of Contract

    Plaintiff argues that the operations manual is not
incorporated into the provisions of the Franchise Agreement, and
therefore Defendants' allegations based on breach of a provision
found in the operations manual, or other policies and procedures,
do not state a breach of contract claim.  Plaintiff further
argues that Defendants have not identified a specific provision
of the Franchise Agreement allegedly breached by Plaintiff, and
without such identification, the claim for breach of the implied

Case No. 8:08-CV-1841-T-17EAJ

duty of good faith and fair dealing is not sufficient.


Defendants respond that Defendants' allegations relate
primarily to the terms of the Franchise Agreement, in particular
Article 5, not to other documents or oral information provided by
Plaintiff. Defendants further argue that Plaintiff's actions and
inactions, violate the terms of the Offering Circular, which was
incorporated by reference in the Franchise Agreement. Defendants
argue that Plaintiff breached its own policies and procedures,
not performing the obligations Plaintiff assumed in establishing
Plaintiff's policies and procedures.

The Court notes that the Preamble to the subject Franchise
Agreement states:

> COMPANY is engaged in the business of
> publishing and distributing by direct mail
> promotional literature and packages known as
> VALPAK Envelopes and of promoting and selling
> advertising services associated with
> Advertising in the VALPAK Envelopes and
> Marks. COMPANY grants, to persons it
> approves, franchises to (and subject to using
> COMPANY'S methods, formats, systems
> specifications, standards operating policies
> and procedures, and Marks): offer and sell,
> in designated geographic areas, advertising
> in VALPAK Envelopes to be distributed within
> such designated geographic areas; offer and
> sell Electronic Advertising for placement on
> VALPAK sites or otherwise distributed through
> electronic medium; and to engage in certain
> types of Intermarket Advertising in
> accordance with COMPANY's Intermarket Sales
> Policy.

Case No. 8:08-CV-1841-T-17EAJ

The Franchise Agreement contains the following definition of "Operating Manual":

> "**<u>Operating Manual</u>**" means the materials provided by COMPANY which contain the specifications, standards, policies and operating procedures prescribed by COMPANY for the operation of the franchised business operating under the VALPAK system, including the Production Handbook.  Such materials may be periodically amended, modified, replaced and/or supplemented by COMPANY and will be provided in writing, electronically, via online access or in any other format or means so selected by COMPANY.  COMPANY's changes to the Operating Manual will not materially and detrimentally alter substantive rights and obligations of the FRANCHISEE under this Agreement without the Consent of Dealers.

The term "Consent of Dealers" is defined within the Franchise Agreement:

> "**<u>Consent of Dealers</u>**" means the approval of Dealers (including O&O Dealers) that accounted for at least 70% of the total Mailing Volume by VALPAK Envelopes mailed during the calendar year preceding the notice requesting the approval.  For this purpose, a Dealer's failure to respond or vote on the particular proposed request within 3 business days constitutes approval.

The Court also notes the following provision:

> **<u>Acknowledgments.</u>**  FRANCHISEE (and each Owner) has read this Agreement and COMPANY's franchise offering circular and understands and accepts the terms, conditions, and covenants contained in this Agreement as being reasonably necessary to maintain COMPANY's standards and thereby to protect

Case No. 8:08-CV-1841-T-17EAJ

and preserve the goodwill of the Marks and the VALPAK System. FRANCHISEE represents that it has conducted an independent investigation of the business venture described in this Agreement, and recognizes that it involves business risks and that its success is dependent upon FRANCHISEE's own business abilities. COMPANY expressly disclaims making, and FRANCHISEE acknowledges that it has not received or relied upon, any guaranty, express or implied, as to the revenues, profits or success of the venture described in the Agreement or any representation as to the value of the Marks. FRANCHISEE acknowledges that it has not received or relied upon any representations about the Franchise by COMPANY, or its officers, directors, employees, or agents, that are contrary to the statements made in COMPANY's franchise offering circular or to the terms herein. FRANCHISEE acknowledges that in all of their dealings with FRANCHISEE, the officers, directors, employees and agents of COMPANY act only in a representative capacity and not in an individual capacity. FRANCHISEE further acknowledges that this Agreement, and all business dealings between FRANCHISEE and such individuals as a result of this Agreement, are solely between FRANCHISEE and COMPANY. FRANCHISEE further represents to COMPANY, as an inducement to its entry into this Agreement, that FRANCHISEE has made no misrepresentations in obtaining the Franchise.

The Franchise Agreement does not expressly provide that the Offering Circular is incorporated by reference. Since Plaintiff required the Franchisee to acknowledge that Franchisee read the Offering Circular, at this time the Court will assume the Franchise Agreement does incorporate the Offering Circular.

Case No. 8:08-CV-1841-T-17EAJ

As to breach of contract based on Plaintiff's policies and procedures, Defendants have argued that Plaintiff's policies and procedures were incorporated, at least by implication, into the franchise agreement.  The Franchise Agreement requires Defendants to comply with Plaintiff's policies and procedures.  However, as to Plaintiff, Plaintiff is authorized to periodically amend, modify, replace and supplement the policies and procedures.  It is not clear whether any action or inaction by Plaintiff was done in accordance with a policy or procedure which was amended at some time after the parties entered into the Franchise Agreement. Since at this time the Court reads the allegations of the counterclaim in the light most favorable to the non-moving party, the Court will expect to resolve this issue in a motion for summary judgment.

After consideration, the Court **denies** the Motion to Dismiss Counterclaim as to this issue.  Accordingly, it is

**ORDERED** Defendants' Counterclaims are **dismissed**, with leave to file Amended Counterclaims which comply with the Federal Rules of Civil Procedures; it is further

**ORDERED** that the Motion to Dismiss Counterclaim is **granted** in part and **denied** in part, as set forth above.

12

Case No. 8:08-CV-1841-T-17EAJ


    **DONE and ORDERED** in Chambers, in Tampa, Florida on this
24th day of August, 2009.



                    ELIZABETH A. KOVACHEVICH
                    UNITED STATES DISTRICT JUDGE

Copies to:
All parties and counsel of record


13